IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CONNIE FRANCES GRAY,
    Plaintiff,

vs.                                                Case No.: 3:12cv506/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]
    Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

        This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* docs. 10, 11).  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner of the SSA") denying Plaintiff's applications for  disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

        Upon review of the record, the court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence and comport with proper legal principles; thus, the decision of the Commissioner is affirmed.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Fed. R. Civ. P. 25(d), she is therefore automatically substituted for Michael J. Astrue as the Defendant in this case.

I.     PROCEDURAL HISTORY

On November 10, 2008, Plaintiff filed applications for DIB and SSI, and in each application she alleged disability beginning October 16, 2007 (tr. 21).[2] Her applications were denied initially and on reconsideration, and thereafter she requested a hearing before an administrative law judge ("ALJ"). An administrative hearing was held on October 22, 2010, at which Plaintiff was represented by counsel; Plaintiff and a vocational expert ("VE") testified. On November 8, 2010, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 21–33). The Appeals Council subsequently denied Plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

II.     FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (*see* tr. 21–33):

     (a)     Plaintiff meets the insured status requirements of the Act through December 31, 2010.[3]

     (b)     Plaintiff has not engaged in substantial gainful activity since October 16, 2007, the alleged onset date.

     (c)     Plaintiff has the following severe combination of impairments: human immunodeficiency virus ("HIV"), obesity, myofascial pain, knee pain, hypertension, headaches, status post alcohol abuse, and depression. Plaintiff's asthma is a nonsevere impairment.

     (d)     Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the impairments included in 20 C.F.R. Part 404, Subpart P, Appendix 1.

---

     [2] All references to "tr." refer to the transcript of Social Security Administration record filed on January 18, 2013 (docs. 13–16). Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

     [3] Thus, the time frame relevant to Plaintiff's claim for DIB is October 16, 2007 (date of alleged onset), through December 31, 2010 (date last insured). The time frame relevant to her claim for SSI is November 10, 2008 (the date she applied for SSI) through November 8, 2010 (the date the ALJ issued his decision). *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which she is both disabled and has an SSI application on file).

(e) Plaintiff has the residual functional capacity ("RFC") to perform light work,[4] except she cannot perform sustained fine and gross manipulation with the right upper extremity. She is able to perform simple, routine tasks, and can perform the basic mental demands of work on a sustained basis.

(f) Plaintiff is capable of performing her past relevant work as a customer service representative, which work does not require the performance of activities precluded by her RFC. Alternatively, based on the testimony of the VE and in light of Plaintiff's age, education and work experience, there are other jobs existing in significant numbers in the national economy that Plaintiff can perform, specifically, the jobs of non-postal mail clerk and usher.

(g) Plaintiff has not been under a disability, as defined in the Act, from October 16, 2007, through the date of the decision.

III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Retr. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir.1998); Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427,

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

28 L. Ed. 2d 842 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); <u>Lewis</u>, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).  "The court need not determine whether it would have reached a different result based upon the record," <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991), and should not substitute its judgment for that of the Commissioner.  <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).  Pursuant to 20 C.F.R. § 404.1520(a)–(g),[5] the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

---

[5] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416).  Therefore, citations in this Order should be considered to refer to the appropriate parallel provision.  The same applies to citations of statutes or regulations found in quoted court decisions.

Case No.: 3:12cv506/EMT

5.  Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.  DISCUSSION[6]

Plaintiff asserts that the decision denying benefits should be reversed because (1) the opinions of treating physicians Michelle Brandhorst, M.D., and Lokaranjit Chalasani, M.D., were not given great weight; and (2) the ALJ failed to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT").[7]

---

[6] The transcript in this case is exceptionally lengthy at 1037 pages, making the parties' compliance with certain instructions in the court's January 25, 2013, Scheduling Order (doc. 17) particularly important. In relevant part, the Order directs the parties to "file and serve a brief setting forth concisely the basis for the affirmance or reversal of the final decision of the Commissioner and a detailed analysis of the administrative record, with citation of authorities in support of the party's position and to the administrative record" (id. at 1) (emphasis in original). The Order further informs the parties that the "[f]ailure . . . to support factual contentions with accurate, precise citations to the record will result in the contention(s) being disregarded for lack of proper development" (id. at 2) (emphasis in original).

In her memorandum, Plaintiff cites the record in some detail with respect to the procedural aspects of the case, as well as with respect to the testimony that was given at the administrative hearing. Plaintiff does not, however, provide a detailed analysis of the extensive medical record in this case, and she offers very few citations to the medical record in support of her factual contentions. While the court has conducted a review of the relevant medical record in this case, it is not obliged to scour the record in order to locate support for Plaintiff's claims. Accordingly, as the Scheduling Order cautions, to the extent Plaintiff has failed to support her factual contentions with accurate, precise citations to the record, those contentions may be disregarded for lack of proper development.

[7] The court notes that in the "Relief Sought" section of Plaintiff's memorandum she asks the court "to award reasonable attorney's fees pursuant to the Equal Access of Justice Act, 28 U.S.C. § 241(d); [to] extend the time frame specified in Fed. R. Civ. P. 54(d)(2)(B) in which Plaintiff may file an application for 42 U.S.C.A. § 406(b) attorney's fees so as to allow the Commissioner to calculate Plaintiff's past-due benefits; *to review the record for a proper credibility finding*; and to reverse the Defendant's findings that Ms. Gray is not disabled and to award benefits continuing indefinitely, or, alternatively, to remand the case to the Commissioner for further proceedings consistent with the law of the Eleventh Circuit" (doc. 19 at 19) (emphasis added). Thus buried in this list is the request "to review the record for a proper credibility finding." Nowhere else in Plaintiff's memorandum is there even another mention of the ALJ's credibility finding, much less a properly developed argument concerning it. Under these circumstances, it is not

Treating Physicians' Opinions

Under what is known as the "treating physician's rule," substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. *See* Lewis v. Callahan, 125 F.3d 1436, 1439–41 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Sabo v. Chater, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004) (citation omitted). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See* Edwards, 937 F.2d 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements). If a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, however, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2). The ALJ is required to consider all of the evidence in the claimant's record when making a disability determination, *see* 20 C.F.R. §§ 404.1520(a), 416.920(a), and he must "state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence." Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990). Nevertheless, there is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, that is, a failure to provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

---

surprising that the Commissioner failed to note or address in her memorandum an issue regarding the ALJ's credibility finding. Absent Plaintiff's clearly presenting and developing a challenge to the ALJ's credibility finding—in other words, in a manner that fairly brings the issue to the attention of the court and the Commissioner—the court finds that any challenge by Plaintiff to the ALJ's credibility finding should be disregarded for lack of proper development. Alternatively, the court finds that Plaintiff has effectively waived the issue.

Case No.: 3:12cv506/EMT

In this case, the ALJ stated that he found Dr. Brandhorst's August 31, 2010, clinical assessment of pain ("CAP") form to be inconsistent with her treatment notes and thus that it was entitled to "no weight"[8] (tr. 31).  Additionally, the ALJ gave "significantly reduced weight" to Dr. Brandhorst's opinions as expressed in her treatment records because such opinions were not consistent with her own findings or other medical evidence (*id.*).  Plaintiff submits that these reasons are "insufficient under Eleventh Circuit precedent" (*see* doc. 19 at 10, 14).  In support, Plaintiff cites several cases from the Eleventh Circuit.[9]  She also points to Dr. Brandhorst's CAP form (tr. 875), and a one-page list of seventeen medical "encounters" Plaintiff had at Sacred Heart Health System (tr. 880).[10]

First, the cases Plaintiff cites in support of this argument are from district courts in the Eleventh Circuit, not the Eleventh Circuit Court of Appeals.  Thus the cases are not binding Eleventh Circuit precedent.[11]  Second, the ALJ stated that he gave careful consideration to "the entire record" in reaching his findings of fact and conclusions of law and that he carefully considered "all the evidence" in determining that Plaintiff was not disabled (tr. 21, 23).  The ALJ's lengthy discussion of Plaintiff's medical conditions, which references twenty-seven of the thirty-

---

[8] Dr. Brandhorst's CAP form reflects the following findings: pain is present to such an extent as to be distracting to adequate performance of daily activities or work; and physical activity will result in an increase of pain to such an extent that bed rest and/or medication is necessary (tr. 875).  On the CAP form Dr. Brandhorst also opined that the prescribed medication's side effects could be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc. (*id.*).

[9] Apparently for the proposition that it is error for the ALJ to discount a treating physician's opinion as being "inconsistent" with her own records (and/or other medical records) without explaining the inconsistency in detail, Plaintiff cites Borden v. Astrue, 494 F. Supp. 2d 1278, 1283–84 (N.D. Ala. 2007); Beck v. Astrue, 663 F. Supp. 2d 1212, 1217–18 (N.D. Ala. 2009); and Stanton ex rel. J.C.N. v. Astrue, 482 F. Supp. 2d 1318, 1323 (N.D. Ala. 2007) (*see* doc. 19 at 14).

[10] The list consists of the numbers and dates of the medical "encounters," along with a short description of the diagnosis made at each "encounter" and the diagnostic code assigned.  The list reflects that Plaintiff presented for care of "migraine headaches, osteoarthritis, costochondritis, asthma and other physical ailments from 2009 through 2010" (tr. 880), but no details regarding the diagnoses or any treatment are provided.

[11] Under the appropriate factual and legal circumstances, such cases may be considered persuasive authority. As explained below, however, in the instant case the court concludes the ALJ's reasons for rejecting Dr. Brandhorst's opinion are adequately articulated and supported by the record.

three medical evidence exhibits that were before him, lends credence to these statements.[12] The ALJ's thorough discussion of the evidence is not a "broad rejection" of Plaintiff's allegations of disability but rather is adequate to enable the court to conclude the ALJ considered Plaintiff's medical condition as a whole. Dyer, 395 F.3d at 1211. Additionally, although Plaintiff argues that the ALJ was not sufficiently specific in explaining why he found Dr. Brandhorst's opinions to be inconsistent with the record, Plaintiff has not pointed the court to any evidence whatsoever in the record that undermines the ALJ's findings. In other words, Plaintiff has not identified any evidence suggesting that Dr. Brandhorst's opinions in fact were consistent with her own records and other evidence of record, such that it was error for the ALJ to refuse to give the opinions great weight. Solely on the basis of having failed to meet her evidentiary burden, Plaintiff has not established a claim for relief under the treating physician's rule with respect to Dr. Brandhorst. Regardless, the court is satisfied that the record in fact adequately supports the ALJ's determinations regarding this physician's findings.

The ALJ discussed at length the records concerning Plaintiff's high blood pressure and related headache complaints, including the records from Dr. Brandhorst that referenced these conditions (tr. 26–27). He found that the degree and frequency of, as well as the treatment for, these conditions to have been inconsistent and limited (*id.*, citing tr. 876–987). Dr. Brandhorst's medical records also refer to Plaintiff's complaints of and treatment for insomnia (tr. 912–14), moderate asthma (tr. 889–90, 901–02), chest wall pain (tr. 887–88), and moderate arthritis (tr. 882–83, 891–92), although the ALJ did not specifically discuss this information. Especially in a medical record the size of the instant one, that the ALJ did not discuss in detail all of Dr. Brandhorst's findings is not surprising. Nor does it mean that the ALJ did not consider all of Dr. Brandhorst's findings. *See* McCray v. Massanari, 175 F. Supp. 2d 1329, 1336 (M.D. Ala. 2001). In any event, the medical information contained in Dr. Brandhorst's records, whether specifically mentioned by the ALJ in his decision or not, is not consistent with the significant degree of pain Dr. Brandhorst identified in her CAP form. Nor do Dr. Brandhorst's treatment records appear to contain other

---

[12] The twenty-seven medical evidence exhibits referenced by the ALJ in his decision consist of approximately 557 pages of medical records (*see* tr. 372–98, 399–418, 448–51, 452–76, 479–521, 522–35, 536–38, 557–65, 575–79, 580–81, 582–86, 587–600, 601–04, 605–08, 609–44, 645–707, 708–13, 714–30, 731–44, 745–48, 749–56, 757–90, 791–857, 858–62, 863–73, 874–75, 876–1027). The six medical evidence exhibits not mentioned by the ALJ—none of which pertain to Dr. Brandhorst or conditions at issue in this appeal—total approximately 58 pages of medical records (*see* tr. 419–44, 445–47, 477–78, 539–47, 548–56, 566–74).

assessments supportive of great pain, much less supportive of an opinion of disability. Accordingly, the court is satisfied that the ALJ had good cause to discount any opinion of disability due to pain that was expressed by Dr. Brandhorst. Phillips, 357 F.3d at 1240–41 (good cause for discounting a treating physician's opinion exists when opinion is inconsistent with doctor's own medical records). As to Dr. Brandhorst, therefore, Plaintiff's claim for relief based on misapplication of the treating physician's rule fails.

Next, the court addresses Plaintiff's claim that Dr. Chalasani's assessment of her mental impairments was wrongly rejected. The ALJ found that "[n]o evidentiary weight can be given to the opinion [rendered by Dr. Chalasani on July 1, 2010]"[13] because, although Dr. Chalasani was identified as a treating source at Lakeview Center, there was no evidence of his professional relationship with Plaintiff or evidence in the Lakeview Center treatment notes to support his conclusions or the limitations he suggested (*id.*). Plaintiff does not make a direct challenge to these findings by the ALJ. Rather, she points to "new, material evidence" she submitted to the Appeals Council that she contends contradicts the ALJ's rationale (doc. 19 at 11). According to Plaintiff, the new records establish her treating relationship with Dr. Chalasani and also support his July 2010 psychological assessment (*id.* at 11, citing tr. 1030–37).[14] The Appeals Council considered the additional evidence but, finding no reason to review the ALJ's decision, denied Plaintiff's request for review (*see* tr. 1–6).

---

[13] In his July 1, 2010, psychological assessment, Dr. Chalasani opined that Plaintiff has "marked" impairments in the following areas: the ability to ask simple questions or request assistance; the ability to get along with co-workers or peers; the constriction of interests; the deterioration of personal habits; the ability to understand, remember and carry out complex instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain a routine without special supervision; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (tr. 860–61). Dr. Chalasani also opined that Plaintiff has "mild" impairments in the ability to interact with appropriately with the general public; to respond appropriately to supervision; and to respond appropriately to changes in the work setting (tr. 861–62). She has "moderate" impairments with respect to the degree of restriction in her daily activities; in the ability to understand, remember, and carry out simple instructions or repetitive tasks; and in the ability to make simple work-related decisions (*id.*).

[14] Plaintiff describes the new records as establishing that she underwent "treatment in August 2009 as well as March, June, and September of 2010 during the relevant time period and show[ing] continuous problems with mood swings, depression, anxiety, and fatigue" (doc. 19 at 11).

Case No.: 3:12cv506/EMT

A social security claimant generally is permitted to present new evidence at each stage of the administrative process. *See* 20 C.F.R. § 404.900(b); *see also* Ingram, 496 F.3d at 1261. The Appeals Council has the discretion not to review the ALJ's denial of benefits, 20 C.F.R. § 404.967, though it must consider "new and material evidence" that "relates to the period on or before the date of [the ALJ's] hearing decision" and must review the case if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). There are two methods by which a reviewing court may remand a cause under 42 U.S.C. § 405(g)—"sentence four remands" and "sentence six remands." Ingram, 496 F.3d at 1261. With respect to the claimant's submission of new evidence to the Appeals Council, a sentence four remand is appropriate when the Appeals Council does not adequately consider the evidence in denying the claimant's request for review. *Id.* at 1268. To obtain a sentence four remand, the claimant must show that, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole or, similarly, that the new evidence renders the denial of benefits erroneous. *Id.* at 1262, 1266–67; *see also* 20 C.F.R. § 404.970(b). A sentence six remand is appropriate only when the claimant submits evidence for the first time to the district court that might have changed the outcome of the administrative proceeding. Ingram, 496 F.3d at 1267–68.

The evidence Plaintiff submitted to the Appeals Council consists of four Medication Management notes evidently prepared by (but not bearing the signature of) Dr. Chalasani and an unsigned Formal Treatment Plan Review note prepared by an unidentified source. The earliest of Dr. Chalasani's Medication Management notes is dated August 31, 2009 (tr. 1036–37). With respect to the objective portion of the examination, Dr. Chalasani noted that Plaintiff appeared to be alert, oriented times three, calm, cooperative, and well-groomed with "good ADLs [activities of daily living]" (tr. 1036). Her speech was within normal limits and her thought process was goal-directed, but her mood was dysphoric and her affect was blunt (*id.*). There were no overt psychotic symptoms, and Plaintiff denied homicidal or suicidal ideation, intent, or plan. Plaintiff displayed fair cognitive ability, insight, and judgment (*id.*). Dr. Chalasani's diagnoses were depressive disorder, not otherwise specified ("NOS"), and mood disorder, secondary to general medical

condition (*id.*). Plaintiff's global assessment of functioning ("GAF") score was 55 (*id.*).[15] Dr. Chalasani noted that Plaintiff would be continued on Lexapro and Trazodone, and he discussed with her the benefits of individual therapy (about which Plaintiff reportedly was "ambivalent") (*id.*). Dr. Chalasani noted that Plaintiff had reported on the clinical efficacy of her medications, which she described as "help[ing]" her, though she continued to be isolative and was irritable (*id.*). He advised Plaintiff to return in six to eight weeks or earlier if needed (*id.*).

Dr. Chalasani's next Medication Treatment note is dated March 18, 2010 (tr. 1034–35), or more than six months after her prior reported visit on August 31, 2009. Plaintiff reported that she continued to be "at baseline with very minimal response to the medication" for her mood symptoms (tr. 1034). She again refused individual therapy (*id.*). Dr. Chalasani's objective observations, diagnoses, and estimate of Plaintiff's GAF score were similar to those he made in his August 2009 report (*id.*). Dr. Chalasani continued Plaintiff's medications and advised her to return in three months for follow-up (*id.*). Dr. Chalasani next saw Plaintiff on June 22, 2010, when she reported that her mood "'was a little better'" (tr. 1033). Dr. Chalasani noted that "[o]verall, the patient appears to be maintaining treatment gains and tolerating the medication well. The patient denies any exacerbation of her mood or anxiety symptoms" (*id.*). Dr. Chalasani's objective observations, diagnoses, and estimate of Plaintiff's GAF score were similar to those he made in his August 2009 and March 2010 reports (*id.*). Plaintiff's medications were continued, and she was advised to return in three months (*id.*).

Dr. Chalasani's final treatment note is dated September 22, 2010 (tr. 1031), or about three months after her prior visit. Plaintiff reported that she continued to feel depressed "at times" and had trouble with her energy level and fatigue (*id.*). Plaintiff had some difficulty sleeping, but she denied any medication side effects (*id.*) Dr. Chalasani's objective observations, diagnoses, and estimate of Plaintiff's GAF score were similar to those he made in his three prior reports (*id.*). Dr. Chalasani adjusted Plaintiff's medications and advised her to return in four to six weeks to monitor

---

[15] GAF is the overall level at which an individual functions, including social, occupational, academic, and other areas of personal performance. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 30–32 (4th ed. 1994) ("DSM–IV"). It may be expressed as a numerical score. *Id.* at 32. A score between 51 and 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

her progress and also to check for side effects (*id.*). Also on September 22, 2010, a Formal Treatment Plan Review was completed (tr. 1030). The Review indicates that, with respect to Plaintiff's progress toward goals, her "depression has decreased some since she was last seen in July" (*id.*). She talked more with her friends and family, but her mood swings remained the same (*id.*). It was noted that Plaintiff wished to continue to receive services at Lakeview Center; she was encouraged to continue her medications as prescribed and informed of counseling services (*id.*).

In this case, because Plaintiff submitted the evidence to the Appeals Council, the court must consider whether remand under sentence four is warranted. The court concludes it is not, as Plaintiff has not made the requisite showing. While the additional records Plaintiff submitted to the Appeals Council may be said to establish her treating relationship with Dr. Chalasani, they do not support the numerous "marked[ly]" severe findings made in his July 2010 psychological assessment (tr. 860–62). Importantly, the GAF scores Dr. Chalasani assessed were consistently in the mid "moderate" range (tr. 1031, 1033, 1034, 1036). Also, Plaintiff's reports to Dr. Chalasani suggest that her medications were helping and her symptoms were somewhat better. For example, on June 22, 2010, or fewer than ten days prior to Dr. Chalasani's July 1, 2010, assessment, Plaintiff reported that her mood "'was a little better,'" and Dr. Chalasani noted that "[o]verall, the patient appears to be maintaining treatment gains and tolerating the medication well. The patient denies any exacerbation of her mood or anxiety symptoms" (tr. 1033). Moreover, Dr. Chalasani's Medication Management notes do not reflect that he conducted any objective standardized tests, other formal tests, or in-depth evaluations or treatments. In short, Dr. Chalasani's notes simply do not contain enough findings to support his opinion that Plaintiff had a "marked" inability to ask simple questions or request assistance; get along with co-workers or peers; understand, remember and carry out complex instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; sustain a routine without special supervision; or complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Chalasani's Medication Management notes also are insufficient to show that Plaintiff suffered a "marked" constriction of interests or deterioration in personal habits. The court also observes that the Medication Management notes reflect that

although Plaintiff presented to Dr. Chalasani in order to obtain medications, Plaintiff repeatedly declined to accept therapy—the psychological records for which, if she had agreed to participate, might have adequately documented the level of impairment in the areas of Dr. Chalasani's psychological assessment. In any event, without sufficient documentation from a treating source—which, as noted, is not provided by Dr. Chalasani's Medication Management Notes or the Formal Treatment Plan Review—Dr. Chalasani's July 2010 psychological assessment reflecting "marked" impairment in nine of nineteen areas lacks adequate support.[16]

In sum, the information contained in Dr. Chalasani's four reports from August 2009 and March, June, and September 2010 (and the September 22, 2010, Formal Treatment Plan Review) is not sufficient to support Dr. Chalasani's July 2010 psychological assessment. These records therefore do not render the ALJ's actions, findings, or conclusions contrary to the weight of the evidence of record, and they do not render the denial of benefits erroneous. 20 C.F.R. § 404.970(b). Thus, a remand pursuant to sentence four of § 405(g) based on the additional evidence Plaintiff submitted to the Appeals Council is not warranted.

Plaintiff also argues that if the ALJ had "misgivings" about her treating relationship with Dr. Chalasani, he should have recontacted Dr. Chalasani to seek additional information so that he could make an informed decision as to the weight Dr. Chalasani's opinion should be given (doc. 19 at 12).

"[A] hearing before an ALJ is not an adversarial proceeding" and "the ALJ has a basic obligation to develop a full and fair record." Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Accordingly, the ALJ must probe into all relevant facts, even where a claimant is represented by counsel. Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). The ALJ is not required to recontact a treating source, however, when the ALJ rejects the source's opinion because it is unsupported by or inconsistent with the record. *See* 20 C.F.R. § 416.927 (providing an opinion unsupported by or inconsistent with the evidence is entitled to little or no weight). Development of the record by recontacting a treating source is necessary only where the record is insufficient for the ALJ to make a determination about whether an individual is or is not disabled. *See* 20 C.F.R. §§

---

[16] Although Plaintiff does not discuss them, her other records from the Lakeview Center during the relevant period of October 16, 2007, through November 10, 2010, likewise do not support Dr. Chalasani's July 2010 psychological assessment (*see* tr. 453–55, 583–85, 607–08). The same is true with respect to Plaintiff's Lakeview Center records for the period prior to October 16, 2007 (tr. 456–76, records dated November 15, 2004, to November 21, 2006).

416.912(e) and 416.927(c)(3) (effective prior to Mar. 26, 2012) (stating that an ALJ needs to recontact a medical source only where the ALJ finds that the available evidence is insufficient to make a disability determination). In determining whether remand is appropriate, courts should be guided "by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995) (quotations omitted). The likelihood of unfair prejudice may arise if there is an evidentiary gap that "the claimant contends supports her allegations of disability." *Id.* at 936 n.9.

In this case, the court concludes that the medical evidence concerning Plaintiff's alleged mental impairment was sufficient for the ALJ to decide the case. As previously noted, the records from Lakeview Center, which span the period before and after the date Plaintiff alleges disability, do not support a finding of disability. *See* n.16, *supra.* The ALJ also reviewed evidence from Frank A. Brown, Ph.D., a psychologist who examined Plaintiff at the request of the State agency in February 2009. Dr. Brown assessed Plaintiff with depression of mild to moderate severity and a GAF score of 60, which indicated only mild symptoms (tr. 577). Additionally, State agency psychologist Robert Schilling, Ph.D., a non-examining consultant, examined Plaintiff's records and opined in February 2009 that Plaintiff had depression of mild to moderate severity (tr. 590) and anxiety disorder, NOS (tr. 592). Rating Plaintiff's functional limitations, Dr. Schilling estimated that Plaintiff had a mild degree of limitation with respect to the restrictions of activities of daily living and difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation (tr. 597). On a mental RFC Assessment, Dr. Schilling found that Plaintiff had no "marked" limitations and was "moderately" limited in four of twenty domains; in the remaining sixteen domains Plaintiff was "not significantly limited" (tr. 601–02). Similarly, although not identically, non-examining consultant Robert Stainback, Ph.D., found in a mental RFC that Plaintiff had no "marked" limitations and was "moderately" limited in four of twenty domains; in the remaining sixteen domains Plaintiff was "not significantly limited" (tr. 745–46). Dr. Stainback also estimated that Plaintiff had no functional limitations with respect to restrictions of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation (tr. 741).

In short, the court concludes that the record was sufficient for the ALJ to make a decision without the need to recontact Dr. Chalasani merely because the ALJ decided to reject Dr. Chalasani's July 2010 opinion. In light of the substantial evidence in the record, the ALJ had the necessary information to determine Plaintiff's mental impairment and associated functional limitations. Moreover, Plaintiff has not alleged, much less shown, that she suffered prejudice as a result of any failure of the ALJ to recontact Dr. Chalasani. There is no allegation or evidence the ALJ's decision would have changed in light of any additional information. Indeed, the court has concluded the contrary with respect to the additional records that were submitted to the Appeals Council. Consequently, the ALJ did not err by failing to recontact Dr. Chalasani.

Conflict Between VE's Testimony and DOT

Plaintiff also contends that the Commissioner's decision should be reversed because the ALJ failed to resolve a conflict between the VE's testimony and the DOT, as required by Social Security Ruling ("SSR") 00-4p.[17] Plaintiff notes that the ALJ determined she had the mental RFC to perform only "simple, routine tasks" and relied on the opinions of Drs. Stainback and Schilling that she retained the ability to understand, remember, and carry out only very short and simple instructions (doc. 19 at 17). According to Plaintiff, the ALJ's mental RFC determination effectively equates to her having a reasoning development level of one under the DOT (*id.* at 19). She submits that this reasoning development level is inconsistent with the ALJ's finding at step four that she can perform her past work as a customer service representative because that position requires a reasoning development level of three. Moreover, Plaintiff submits, a reasoning development level of one is inconsistent with the jobs the ALJ alternatively identified at step five because the position of non-postal clerk requires a reasoning development level of three, and the position of usher requires a reasoning development level of two.

The court first notes that Plaintiff cites not even one case in support of her contention that having the mental RFC to perform only "simple, routine tasks" and retaining the ability to understand, remember, and carry out only very short and simple instructions limits her "to a

---

[17] According to SSR 00-4p, "[n]either the DOT nor the VE . . . automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information." SSR 00-4p, 2000 WL 1898704, *2 (Dec. 4, 2000).

Reasoning Development level of 1" (doc. 19 at 19). In any event, contrary to Plaintiff's assertion, the court notes that "[m]ost courts which have addressed this issue have held that the requirement of Reasoning Level 2 or 3 is not inconsistent with the ability to perform only simple tasks." Hurtado v. Astrue, Case No. 09-60930-CIV, 2010 WL 1850261, at *11 (S.D. Fla. April 14, 2010) (citing Miller v. Comm'r of Soc. Sec., 246 F. App'x 660 (11th Cir. 2007) (concluding that no remand was required where VE identified reasoning level three jobs for plaintiff who could do only simple, routine, and repetitive work)); Terry v. Astrue, 580 F.3d 471 (7th Cir. 2009) (finding that level three reasoning was not inconsistent with plaintiff's ability to perform only simple work); Renfrew v. Astrue, 496 F.3d 918 (8th Cir. 2007) (find that reasoning level three was not inconsistent with inability to do complex work); Lara v. Astrue, 305 F. App'x 324 (9th Cir. 2008) (holding that plaintiff who was able to perform simple repetitive tasks was capable of doing work at reasoning level two); Hackett v. Barnhart, 395 F.3d 1168 (10th Cir. 2005) (stating that "level two reasoning appears more consistent with [p]laintiff's RFC" of "simple and routine work tasks"); Money v. Barnhart, 91 F. App'x 210 (3d Cir. 2004) (stating that "[w]orking at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive."); Anderson v. Astrue, Case No. 2:11–00046, 2011 WL 3843683 at *4–5 (S.D. Ala. Aug. 30, 2011) (noting that "several other courts have concluded that jobs with a reasoning level of two are consistent with simple, unskilled work") (citing Meissl v. Barnhart, 403 F. Supp. 2d 981, 984–85 (C.D. Cal. 2005) (holding that DOT's level two reasoning requirement did not conflict with ALJ's finding that plaintiff could perform work involving simple, routine tasks; although level two calls for an ability to carry out detailed instructions, "it specifically caveats that the instructions would be uninvolved—that is, not a high level of reasoning")). See also Flaherty v. Halter, 182 F. Supp. 2d 824, 850 (D. Minn. 2001) (stating that "the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation" to "simple, routine, repetitive, concrete, tangible tasks").

      In the instant case, the court concludes that, even if Plaintiff has the mental RFC to perform only "simple, routine tasks" and retains the ability to understand, remember, and carry out only very short and simple instructions, these capacities are consistent with a reasoning level of two or three, not a reasoning level of one as posited by Plaintiff. As no conflict exists between the VE's testimony and the DOT concerning Plaintiff's ability to work as a customer service representative

or non-postal mail clerk [requiring a reasoning development level of three], or concerning her ability to work as an usher [requiring a reasoning development level of two], the ALJ committed no error.[18]

Additionally, in a recent unpublished case from the Eleventh Circuit, Leigh v. Commissioner of Social Security, 496 F. App'x 973, 975 (11th Cir. 2012), the court addressed the reasoning level needed to perform "simple, routine, repetitive" instructions and concluded there was no apparent inconsistency between the VE's opinion and the DOT. The court noted that "the ALJ asked the VE if there were any inconsistencies between his opinion and the DOT, and the VE responded that there were not" and the plaintiff "did not offer any evidence controverting the VE's opinion, nor did she object to the opinion." *Id.* Similarly, at the administrative hearing in the instant case the ALJ specifically asked the VE whether his testimony was consistent with the DOT (tr. 65). The VE replied, "Yes, sir, it is" (*id.*). Plaintiff's counsel raised no challenge or objection to the VE's statement (*id.*). Just as in Leigh, therefore, in this case there was no apparent conflict for the ALJ to resolve and thus no error. Gibson v. Astrue, Case No. 1:09-CV-677-AJB, 2010 WL 3655857, at *15 (N.D. Ga. Sept. 13, 2010) (indicating that when there is no apparent conflict between the VE's testimony and the DOT, the ALJ is not required to address SSR 00–4p); Brijbag v. Astrue, Case No. 8:06-CV-2356-T-MAP, 2008 WL 276038, at *2 (M.D. Fla. Jan. 31, 2008) (stating that "the ALJ need not independently corroborate the VE's testimony and should be able to rely on such testimony where no apparent conflict exists with the DOT.") (citation omitted).

Finally, even if there was an actual conflict between any part of the VE's testimony and the DOT, in the Eleventh Circuit the VE's testimony trumps the DOT. Jones v. Apfel, 190 F.3d 1224, 1229–30 (11th Cir. 1994) ("[W]hen the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT."); *see also* Hurtado v. Comm'r of Soc. Sec., 425 F. App'x 793, 796 (11th Cir. 2011) (stating "[e]ven assuming that an inconsistency existed between the VE's testimony and the DOT, the ALJ did not err by relying on the VE's testimony because it "trump[ed]" any inconsistent provisions of the DOT.") (citing Jones, 190 F.3d at 1229–30); Jones v. Comm'r of Soc. Sec., 423 F. App'x 936, 939 & n.4 (11th Cir. 2011) ("Social Security Rulings are not binding on this court.

---

[18] As no conflict exists between the VE's testimony and the DOT, both of the cases on which Plaintiff primarily relies in support of this argument, Leonard v. Astrue, 487 F. Supp 2d 1333, 1339 (M.D. Fla. 2007) (holding that pursuant to SSR 00–4p when a conflict exists between a VE's testimony and the DOT, the ALJ must elicit a reasonable explanation for the conflict and failure to do so can be reversible error), and Estrada v. Barnhart, 417 F. Supp. 2d 1299, 1303–04 (M.D. Fla. 2006) (interpreting SSR 00–4p to require an ALJ to elicit a "reasonable explanation" for a conflict between a VE's testimony and the DOT), are distinguishable.

To the extent SSR 00–4p conflicts with <u>Jones [v. Apfel</u>, 190 F.3d at 1229–30], we are bound by <u>Jones</u>." (internal citations omitted)); <u>Miller</u>, 246 F. App'x at 662 ("Our precedent establishes that the testimony of a [VE] 'trumps' an inconsistent provision of the DOT in this Circuit."). *See also* <u>Riddle v. Colvin</u>, Case No. 1:12–cv–787–WC, 2013 WL 6772419 (M.D. Ala. Dec. 20, 2013) (concluding that plaintiff had failed to establish a conflict between the VE's testimony and the DOT, that the ALJ was only required to resolve "apparent" inconsistencies and no "apparent" conflict existed, and that—even if an actual conflict existed— under binding Eleventh Circuit law the VE's testimony trumps any inconsistent provisions in the DOT); <u>Anderson</u>, 2011 WL 3843683, at *4–5 (finding no conflict between the VE's testimony and DOT and noting, that even if a conflict existed, in the Eleventh Circuit an ALJ is entitled to rely on VE testimony because the VE's testimony "trumps" the DOT) (citing, among other cases, <u>Jones v. Apfel</u>, 190 F.3d. at 1229–30).[19]

V.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote</u>, 67 F.3d at1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is **ORDERED**:

1.  That the docket shall reflect that Carolyn W. Colvin, the Acting Commissioner of Social Security, is the Defendant in this case.

2.  That the decision of the Commissioner is **AFFIRMED**, that this action is **DISMISSED,** and that the clerk is directed to **CLOSE** the file.

At Pensacola, Florida this 20<u>th</u> day of March 2014.

<u>/s/ <i>Elizabeth M. Timothy</i></u><br>
**ELIZABETH M. TIMOTHY**<br>
**UNITED STATES MAGISTRATE JUDGE**

---

[19] Plaintiff's co-counsel in this case should be well-familiar with the line of cases cited by the courts in <u>Riddle</u> and <u>Anderson</u>, *supra* (many of which cases are also cited herein) because these attorneys were also counsel or co-counsel of record in both cases. <u>Should either attorney, in a future case before the undersigned, again seek to argue that remand is warranted due to a conflict between the VE's testimony and the DOT, he is reminded of his duty to the court to disclose (and attempt to distinguish) cases that may be unfavorable to his position</u>.